# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 12-0646 SI (LB) |
| Plaintiff, | **ORDER REGARDING PROCEDURES FOR *FARETTA* HEARING** |
| v. | |
| DUFFY R. DASHNER a/k/a Kevin Dashner, | |
| Defendant. | |

## INTRODUCTION

On December 1, 2014, Defendant Kevin Dashner filed a notice that he wants to represent himself. (ECF No. 118.[1]) The court issues this order to (1) advise the parties and the district judge of the procedures it will follow at the December 8, 2014, hearing, (2) set forth the governing law, (3) set forth the nature of the charges, (4) direct Mr. Sabelli to review this memorandum with Mr. Dashner before the December 8 hearing, and (5) direct the parties to be prepared at the hearing to address the areas of the *Faretta* inquiry discussed herein.

## STATEMENT

Based on his financial status, Mr. Dashner qualified for appointed counsel at no cost to him. (ECF Nos. 9, 67.) He is represented by Martin Sabelli. (ECF No. 67.) On November 12, 2014,

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the top of the document.

ORDER REGARDING PROCEDURES
(CR 12-0646 SI (LB))

Mr. Dashner told the court that he wanted to represent himself, but he also said that he wanted 30 days to find substitute counsel and suggested that he might be find funds to hire substitute counsel. (ECF No. 110.) Because this implicated issues of communication with counsel, part of the hearing was under seal and outside the presence of government counsel. During those sealed proceedings, it was apparent that Mr. Dashner and Mr. Sabelli – while cordial with each other – were not communicating effectively. (*See* 11/12/14 Digital FTR Recording.) During an extended colloquy, the court advised Mr. Dashner about the dangers of self-representation, and he told the court that he had read the section in the Benchbook for U.S. District Court Judges about pro se representation. (*See id.*) The undersigned also advised Mr. Dashner that it would appoint substitute counsel at no cost to him and offered the opportunity to speak to other CJA counsel about his decision. (*See id.*) The court continued the hearing to December 8, 2014 to give Mr. Dashner time to find counsel and consider his decision. (*See id.*) On December 1, 2014, Mr. Dashner filed a notice that he wants to represent himself. (ECF No. 118.)

As stated below, part of the *Faretta* inquiry is an advisement of the nature of the charges. The elements and penalties for the charges in the indictment are as follows (and the court will review these with Mr. Dashner at the December 8, 2014 hearing):

<u>18 U.S.C. § 286, Conspiracy To Submit False Claims (Count One)</u>:

1. There was an agreement between two or more persons to defraud the United States, or any department or agency of the United States (specified in count one as the Internal Revenue Service), by obtaining or aiding to obtain the payment or allowance of any false, fictitious, or fraudulent claim;

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act to carry out the conspiracy.

The elements of the underlying false claims statute, 18 U.S.C. § 287, are as follows:

1. The defendant knowingly presented a false claim to an agency of the United States (specified in count one as the Internal Revenue Service);

2. The defendant knew that the claim was false or fraudulent at the time it was made; and

3. The false or fraudulent claim was material.

A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.

<u>Penalty</u>: 10 years' imprisonment; $250,000 fine or 2 times the gross gain or loss; 3 years' supervised release; restitution; $100 special assessment.

<u>26 U.S.C. § 7206(2), Aiding and Assisting In the Presentation Of a False Income Tax Return (Counts Two and Three)</u>

1. The defendant aided, assisted, advised, procured, or counseled a person (specified in count two as L.L. and in count three as T.G.) in the preparation or presentation of an income tax return that was false or fraudulent;

2. The income tax was false or fraudulent as to any material matter necessary to a determination of whether income tax was owed;

3. The defendant acted willfully.

The government is not required to prove that the taxpayer knew that the return was false.

A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.

<u>Penalty (as to each count)</u>: 10 years' imprisonment; $250,000 fine or 2 times the gross gain or loss; 3 years' supervised release; restitution; $100 special assessment.

## ANALYSIS

### I. APPLICABLE LAW

A defendant who voluntarily and intelligently chooses to represent himself – that is, a defendant who knowingly and intelligently relinquishes the benefits traditionally associated with counsel – has the constitutional right to do so. *See Faretta v. California*, 422 U.S. 806, 835-36 (1975). In order to invoke the Sixth Amendment right to self-representation, a defendant's request must be knowing and intelligent, unequivocal, timely, and not for the purpose of delay. *See United States v. Schaff*, 948 F.3d 501, 503 (9th Cir. 1991).

Here, the district court has vacated the trial dates given the representation issues. (ECF No. 115.) Mr. Dashner's request thus appears to be timely, and any speculation that the request is for the purpose of delay is just that: speculation. *See Faretta*, 422 U.S. at 835-36 (defendant's request was weeks before trial).

As to whether Mr. Dashner's request to represent himself is equivocal, at the November 12, 2014, hearing, he asked both to obtain substitute counsel (with funds that he hoped to get from others) and to represent himself. His lawyer then filed a notice that he wants to represent himself. (ECF No. 118.) On this record, the court cannot conclude that the request is

ORDER REGARDING PROCEDURES
(CR 12-0646 SI (LB))    3

unequivocal.  *See United States v. Smith*, 282 F.3d 758, 762-63 (9th Cir. 2002) (defendant's letter sought appointment of substitute counsel).  At the December 8 hearing, the court will ascertain whether the request is unequivocal.  As part of this inquiry, the court will discuss Mr. Dasher's right to an attorney at all stages of his proceedings, in court and out of court, through trial and appeal, and at no cost to him because he qualifies for appointed counsel.  This is necessary because a defendant has two "correlative and mutually exclusive Sixth Amendment rights: the right to have counsel, on one hand, and the right to refuse counsel and represent himself, on the other hand."  *United States v. Gerritsen*, 571 F.3d 1001, 1007 (9th Cir. 2009).

"Because a defendant who exercises the right of self-representation foregoes the benefits of exercising the right to counsel, 'the accused must "knowingly and intelligently" forgo those relinquished benefits.'"  *Id.* (quoting *Faretta*, 422 U.S. at 835).  Thus, at the December 8 hearing the court will inquire into whether Mr. Dasher's request to represent himself and his waiver of his right to counsel are knowing and intelligent.

For a request and waiver to be knowing, intelligent, and voluntary, a defendant must be aware of the nature of the charges against him, the possible penalties (including the effect of prior convictions), and the dangers and disadvantages of self-representation.  *See United States v. Hantzis*, 625 F.3d 575, 579 (9th Cir. 2010) (citations and quotations omitted).  On December 8, 2014, the undersigned will go through the charges, the elements, and the possible penalties (as set forth in the Statement and as clarified, if necessary, by the government).  The colloquy then will address the dangers and disadvantages of self-representation.

"Warnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed."  *Iowa v. Tovar*, 541 U.S. 77, 89 (2004) (internal quotations omitted).  "Although a defendant need not himself have the skills and experience of a lawyer in order competently and intelligently to choose self-representation, he should be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); *accord Hantzis*, 625 F.3d at 579.  In addition to the charges and possible penalties, the defendant must "understand 'his constitutional

ORDER REGARDING PROCEDURES
(CR 12-0646 SI (LB))                4

right to have a lawyer perform certain core functions' and 'the possible consequences of mishandling those core functions and the lawyer's superior ability to handle them.'" *Gerritsen*, 571 F.3d at 1007 (quoting *United States v. Mohawk*, 20 F.3d 1480, 1484 (9th Cir. 1994)).

The Supreme Court and the Ninth Circuit have not "'prescribe[d] any formula or script to be read to a defendant who states that he elects to proceed without counsel.'" *Id.* (quoting *Tovar*, 541 U.S. at 88); *see United States v. Lopez-Osuna*, 232 F.3d 657, 664 (9th Cir.), *amended* 242 F.3d 1191 (9th Cir. 2000); *United States v. Hayes*, 231 F.3d 1132, 1138 (9th Cir. 2000). Rather, "'the information that a defendant must possess in order to make an intelligent election . .. will depend on a range of case-specific factors, including a defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Gerritsen*, 571 F.3d at 1007 (quoting *Tovar*, 541 U.S. at 88). In *Hayes*, however, the Ninth Circuit recommended the following language:

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. Unlike the prosecutor you will face in this case, you will be exposed to the dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.

*Id.* at 1138-39; *accord United States v. Erskine*, 355 F.3d 1161, 1168 (9th Cir. 2004).

Several other legal points are important.

First, a request may be denied if a defendant demonstrates an unwillingness or an inability to "abide by rules of procedure and courtroom protocol." *See Lopez-Osuna*, 232 F.3d at 665. The court will ask Mr. Dashner if he is willing to follow the rules of procedure and protocol.

Second, the court's focus is on Mr. Dashner's competence to waive counsel, not on his legal competence. *See United States v. Arlt*, 41 F.3d 516, 518 (9th Cir. 1994). As stated above, technical legal knowledge is not required. *See Faretta*, 422 U.S. at 835; *Hayes*, 231 F.3d at 1138.

Third, the court could appoint standby or advisory counsel. Advisory counsel gives technical

ORDER REGARDING PROCEDURES
(CR 12-0646 SI (LB))                5

assistance to a defendant but does not participate in the trial. Standby counsel represents the defendant if self-representation is terminated. *See United States v. Salemo*, 81 F.3d 1453, 1456 n.2 (9th Cir. 1996). Because Mr. Dashner is indigent, he has no right to court-appointed standby or advisory counsel. *See id.* at 1460. But the district court may appoint standby or advisory counsel to protect the Court's own interests in fair and orderly proceedings. *Id.* at 1459. The court will ask Mr. Dashner his views on standby or advisory counsel.

## II. SPECIFIC QUESTIONS TO MR. DASHNER

As discussed above, the court will inquire into whether Mr. Dashner's request for counsel is unequivocal, and it will advise him of the nature of the charges and the possible penalties, and the dangers and disadvantages of self-representation, using the suggested language in *Hayes*. It will ask about advisory or standby counsel.

Areas of inquiry also will include the complex nature of the case. The Federal Judicial Center's Benchbook For U.S. District Judges (Mar. 2013 rev.) contains a *Faretta* colloquy in section 1.02. It is attached as Exhibit A, and the undersigned will go through it at the hearing.

## CONCLUSION

Given that government counsel declined the court's invitation to file a memorandum on the *Faretta* colloquy (*see* ECF No. 110), the court prepared this memorandum to alert counsel about areas of inquiry and to provide context for the hearing before the district court on December 8, 2014, at 3:30 p.m. At the hearing before the undersigned, counsel must be prepared to offer questions about any other areas of inquiry, particularly the case-specific factors about the complexity of the charges and the stage of the proceeding. *See Gerritsen*, 571 F.3d at 1007. Mr. Sabelli also must review this memorandum and the attached colloquy with his client before the case is called.

**IT IS SO ORDERED.**

DATED: December 7, 2014

_____
LAUREL BEELER
United States Magistrate Judge